UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:04CV-171-R

WILLIAM PERDUE,                                                                                    PLAINTIFF

v.

GENE FERRIL, CLINTON CO. JAILER;
MARK A. HENRY, M.D.                                                                             DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Gene Ferril's and Defendant Mark A. Henry, M.D.'s Motions for Summary Judgment (Docket #66 and Docket #68, respectively). The Plaintiff, *pro se* in this matter, has responded (Docket #73). The Defendants have replied to the Plaintiff's response (Docket #74 and Docket #76). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motions for Summary Judgment are **GRANTED**.

### BACKGROUND

On June 28, 2003, Plaintiff William Perdue ("Perdue") was involved in an altercation where he sustained an injury to his right eye. Perdue states that his left eye also was affected by the injury, though the direct contact was with the right side of his head. On July 7, 2003, Perdue received treatment from Defendant Mark Henry, M.D. ("Dr. Henry"), an ophthalmologist in Clinton County, Kentucky. Perdue claims that Dr. Henry performed a "superficial" examination of his left eye, that he saw no problem with Perdue's eye, and he told Perdue should come back one (1) year later for a follow-up appointment. Two (2) days after seeing Dr. Henry, Perdue experienced severe pain in his left eye, where upon Dr. Gary Upchurch ("Dr. Upchurch") referred Perdue to the University of Kentucky Department of Ophthalmology for further treatment. He received medications to use on his left eye at that time.

In September 2003, the Plaintiff was arrested and charged with the felony offense of fourth degree assault. He was taken to the Clinton County, Kentucky Detention Center, and was placed under the supervision of Defendant, Gene Ferril ("Ferril"). During that later half of September, Perdue contends that Ferril did not properly oversee that the Plaintiff receive his medications on his first two (2) nights in jail. Perdue also claims that Ferril caused him to miss one of his appointments with the University of Kentucky Hospital Eye Clinic in Lexington, Kentucky to have surgery on his left eye, after Ferril and the Honorable Edward C. Lovelace ("Judge Lovelace") failed to respond to repeated faxes and telephone calls made to them from the clinic. Perdue alleges that doctors at the UK Department of Ophthalmology attempted to not only get in touch with Perdue's attorney, but also Judge Lovelace and Ferril in regards to having Dr. Sheila Sanders ("Dr. Sanders") examine Perdue as soon as possible at that time. In addition, Perdue says that he made both Ferril and Judge Lovelace aware of his schedule as well as his pain and suffering, which included warnings that Perdue could lose complete vision in his left eye.

On September 30, 2003, Dr. Sanders examined Perdue in Lexington and informed him that there was no "life" remaining in his left eye, and that the eye had deflated like a "soccer ball." She informed the Plaintiff that he had lost all pressure due to being on the prescribed medicine for his eye too long. She took him off his medications, and told him to return in two (2) weeks. On October 14, 2003, Dr. Sanders informed Perdue that he had lost all of his vision in his left eye and that it would have to be removed. His eye was removed on November 10, 2003. Perdue filed his complaint against the Defendants on November 5, 2004.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

The Defendants make six (6) arguments in support of their motions for summary judgment. First, Dr. Henry asserts that Perdue has failed to provide mandatory expert testimony to sustain his claim that Dr. Henry was negligent in his treatment of Perdue. Second, Ferril contends that the Prison Litigation Reform Act ("PLRA") precludes the claims by the Plaintiff because he failed to exhaust his administrative remedies through the prison system. Third, Ferril argues that even if the PLRA does not bar the claims by Perdue, the Plaintiff failed to file his suit within the one (1) year statute of limitations period for 42 U.S.C. §1983 actions. Fourth, Ferril asserts that the Eighth Amendment constitutional rights of the Plaintiff were not violated. Fifth, Ferril contends that he is entitled to qualified immunity. Lastly, Ferril argues that Perdue has failed to prove municipal liability in as far as Ferril acting in his official capacity. The Court shall address each of these matters individually.

*Expert Testimony for the Negligence Claim against Dr. Henry*

In Kentucky, the "rule in malpractice cases is that negligence must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with a general knowledge would have no difficulty recognizing it." *Turner v. Reynolds*, 559 S.W.2d 740, 741 (Ky. App. 1978) *citing Johnson v. Vaughn*, 370 S.W.2d 591 (Ky. App. 1967). In the instant matter, the claim involves the sufficiency of an examination by an ophthalmologist in identifying any eye symptoms concerning the left eye of the Plaintiff. This area of medicine would not be within the general knowledge of lay people because it takes into consideration not only the question of specialized medicine and what a specialized doctor should have done in that situation, but also requires a critique of the particular examination conducted

by Dr. Henry on Perdue. As such, this information would not fall into a category of general knowledge recognizable by laymen. Therefore, the Plaintiff is required to offer expert evidence to support his claim of medical malpractice against Dr. Henry.

Here, the Plaintiff has not provided any expert testimony to support his claim that Dr. Henry was negligent in his examination of Perdue. In an affidavit, Dr. Sanders has stated that she does not intend to testify for Perdue at trial, and she has not indicated that Dr. Henry did not conduct a proper examination of the Plaintiff. The Plaintiff has not offered any other expert evidence to support his contention that Dr. Henry acted negligently. Accordingly, Dr. Henry's motion for summary judgment is granted.

### *Claim Preclusion under the Prison Litigation Reform Act (PLRA)*

In a previous opinion, this Court determined that:

> [T]he complaint submitted by Perdue alleges that the defendant Ferril did not respond to written requests by Perdue to receive treatment for his eye. These facts, construed liberally, may amount to a grievance under the grievance system of Clinton County and may rebut the argument that Perdue did not properly respond to the motion for summary judgment submitted by Ferril.
> Therefore, this Court finds that Perdue may have exhausted his administrative remedies for bringing this claim, and that the Court will initially hear the claim brought by the Plaintiff against the Defendant Ferril.

During discovery, the Plaintiff stated that he had never filed a written statement of any kind with the Clinton County Jail concerning the issues raised in his complaint. However, upon his arrival at the Clinton County Jail in September 2003, Perdue did have at least two (2) conversations with Ferril regarding the health of his eye. Perdue also states that because of the condition of his eye, he was not in a position to file a written grievance at the time.

The PLRA was passed by Congress to prevent prisoners from bringing any action "with respect to prison conditions under...Federal law...until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy the exhaustion requirement, a prisoner must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 994 (6th Cir.2004). "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: if administrative remedies are available, the prisoner must exhaust them." *Brock v. Kenton County, KY*, 93 Fed.Appx. 793, 798 (6th Cir. 2004) (*quoting Castano v. Nebraska Dep't of Corrections*, 201 F.3d 1023, 1025 (8th Cir.2000)).

      The Plaintiff has not demonstrated that he attempted to exhaust his administrative remedies available to him at any point prior to filing his complaint. Further, the Plaintiff has not offered any evidence to show that he was denied access to file a grievance or that he was in any other way prohibited from using the Clinton County grievance procedure. The grievance policy at the Clinton County Jail has been in place since 1999, and it was posted in the jail where Perdue was imprisoned in September 2003. In discovery, Perdue admitted in his deposition that he did not file any written statements with anybody at the Clinton County Jail prior to filing his complaint. His oral communications with Ferril and any other prison personnel do not qualify as exhausting his administrative remedies under the PLRA, even when the statute is construed

liberally. *Boyd*, 380 F.3d at 994; *Williams v. Browman*, 981 F.2d 901, 904-905 (6th Cir. 1992).

Though the Court does not agree with the Defendant's argument that Perdue did not suffer a physical injury in accordance with the PLRA, Perdue nonetheless did not follow the proper administrative process before filing his complaint. Accordingly, Perdue failed to exhaust his administrative remedies available to him at the Clinton County Jail, and, therefore, his claims are precluded by the PLRA.

### *Claim Preclusion by the Applicable Statute of Limitations*

Kentucky's one (1) year statute of limitations applies to all 42 U.S.C. §1983 actions brought in the state of Kentucky, including the instant matter. *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). In applying this standard, this Court must follow any applicable Kentucky tolling provisions. *Ford v. Hill*, 874 F. Supp. 149, 151 (E.D. Ky. 1995). For purposes of the Kentucky statute of limitations, a cause of action accrues when the injury takes place or when the Plaintiff discovers the injury. *Moore v. Ohio River Co.*, 960 F.2d 149 (Table Opinion), *2 (6th Cir. 1992) (*citing Hicks v. Hines,* 826 F.2d 1543, 1544 (6th Cir.1987).

In the instant matter, the Plaintiff learned that his eye would have to be removed on October 14, 2003. Perdue filed his complaints against the defendants more than one (1) year later on November 5, 2004. In his deposition, Perdue acknowledged that he was informed by Dr. Sanders that she would have to remove his eye on October 14, 2003. As such, the statute of limitations period began on that day, October 14, 2003, when Perdue discovered the extent of his injury. Perdue filed his suit more than year after the statute of limitations had tolled. Accordingly, the claim by Perdue is precluded by the one (1) year statute of limitations.

### *Constitutional Rights Claim in Violation of the Eighth Amendment*

In determining whether the Ferril violated the Eighth Amendment constitutional rights of the Plaintiff, the United States Supreme Court has established a two-part test to determine if an Eighth Amendment violation has occurred. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Court held that: "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious,'[in that] a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* at 834, *quoting Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The "second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,' [in that] a prison official must have a 'sufficiently culpable state of mind.'" *Farmer* at 834, *quoting Wilson*, 501 U.S. at 297. "To sustain such a claim, it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to an inmate's serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).

In the instant matter, a genuine issue of material fact exists concerning whether or not Ferril acted deliberately indifferent to the medical condition of Perdue. From an objective standpoint, the alleged omissions by Ferril did result in a denial of minimal civilized life necessities, in that Perdue lost his eye. The facts are not clear as to whether or not Ferril did all he could to help out Perdue or what Ferril knew about Perdue's condition and its severity based on his conversations with the Plaintiff and other prison personnel concerning his left eye. This leaves an issue of fact involving the second part of the *Farmer* test, concerning whether or not Ferril acted deliberately indifferent to the medical condition of Perdue and the seriousness of the

situation.

The Defendant cites the Sixth Circuit Court of Appeals case of *Napier v. Madison County, Ky.*, arguing that in order for Perdue to sustain a claim for an Eighth Amendment violation due to a delay of medical treatment, Perdue must provide medical evidence in the record to establish the detrimental effect of the delay. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). However, the Sixth Circuit, in *Blackmore v. Kalamazoo County*, limited the extent to which the "verifying medical evidence" rule applies to cases involving the delay of medical treatment, holding:

> the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Napier*, which was relied upon by the district court, falls within this branch of decisions. In a word, *Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier* applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury (emphasis added).

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004). Here, the loss of an eye and the pain associated with it cannot be considered a "minor malady" or "non-obvious" to a layperson, especially if Perdue expressed his discomfort to Ferril and other prison officials. Further, the testimony of Dr. Sanders will add to the understanding of the seriousness of the delay, especially in light of the fact that she had attempted to get in touch with the Plaintiff, his attorney and perhaps prison and judicial officials concerning the imminent treatment of the Plaintiff during the month of September. Lastly, though the Plaintiff has not offered medical evidence concerning the medical malpractice of Dr. Henry, that claim is distinguishable to the claim of deliberate indifference of Ferril, and does not preclude the Eighth Amendment claim by

Perdue. Accordingly, the Eighth Amendment claim would survive the Defendant's motion for summary judgment.

### *Claim for Qualified Immunity*

The United States Supreme Court, in *Harlow v. Fitzgerald*, stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Before the Court determines whether or not an officer is protected by qualified immunity, the Court must first determine if there was a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there was a constitutional violation, in order to determine whether or not an officer should receive qualified immunity, the Court must follow the reasoning of the United States Supreme Court in *Saucier*, which examines whether the actions of the employee violates clearly established law that a reasonable officer should know. *Saucier*, 533 U.S. at 201.

As determined *supra*, the Court held that based on the evidence a finder of fact could determine whether or not Ferril violated the Eighth Amendment rights of Perdue. As such, the Court must determine whether a reasonable person in the defendant's situation may have known that his actions violated clearly established law. Here, Ferril knew that Perdue was having complications with his eye and that he needed medical treatment. The evidence suggests that Ferril should have been aware that the Plaintiff had a serious risk of physical harm, after Ferril had spoken to Perdue on at least two (2) occasions about his medical condition. Though the Defendant did attempt to aid the Plaintiff in assisting Perdue with his medication, he should have known that prisoners are entitled to basic medical treatment under the Eighth Amendment. A

finder of fact could determine that Ferril should have known about this clearly established law. Accordingly, Ferril is not entitled to qualified immunity.

### *Claim in Official Capacity*

The United States Supreme Court, in a case arising from the Sixth Circuit, has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67 (1989). As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question. A municipality, such as Clinton County, may be liable under §1983 through: (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Monell New York Dept. Of Social Services*, 436 U.S. 658, 661, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-484 (1986); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390 (1989).

Here, Perdue has not offered any evidence to demonstrate that a policy or custom by the Clinton County Jailer or any other county official. The complaint and evidence suggests that the actions and omissions by Ferril were individual in nature and did not stem from a set Clinton County governmental regulation, policy or custom. In absence of such evidence to meet the *Monell* standard, Perdue cannot sustain his claim against Ferril in his official capacity. Accordingly, the claim against Ferril in his official capacity fails as a matter of law.

### CONCLUSION

For the foregoing reasons, the Defendants' Motions for Summary Judgment are

**GRANTED**.

An appropriate order shall issue.